# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

JOHN DOE,
     Plaintiff, PRO SE,

v.

                                    Case No.: _____

GASTROMED, LLC, and
NEIZA ALVAREZ, APRN,
     Defendants.

_____/

FILED BY ___ MCC ___ D.C.

JUL 2 4 2025

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

**JURY TRIAL DEMANDED**

## COMPLAINT FOR DISCRIMINATION, NEGLIGENCE, AND INJUNCTIVE RELIEF

Plaintiff, proceeding under the pseudonym John Doe pursuant to Court approval, respectfully alleges as follows:

### PRELIMINARY STATEMENT

This action challenges Defendants' discriminatory and negligent failure to provide medically necessary care to Plaintiff, an HIV-positive individual, in violation of Section 1557 of the Affordable Care Act and Florida common law. Despite Plaintiff's established patient history and Defendants' full knowledge of his HIV status, they failed to provide appropriate treatment or follow-up for a confirmed Shigella infection and did not report the infection to the Florida Department of Health as required by law, creating a significant public health risk.

Defendants also failed to post the federally mandated nondiscrimination notice or designate a civil rights coordinator, reflecting systemic noncompliance with civil rights protections in a Medicare-participating facility. Defendants' actions and omissions were inconsistent with

accepted standards of care, contrary to public policy, and foreseeably caused Plaintiff severe emotional distress, humiliation, physical aggravation of preexisting conditions, including but not limited to, worsened bruxism and temporomandibular joint symptoms, and loss of enjoyment of life.

Plaintiff seeks compensatory damages, punitive damages as permitted by law, and injunctive relief requiring Defendants to comply with federal civil rights regulations, report communicable diseases as required by law, and implement appropriate policies and staff training to prevent future discrimination and protect public health, along with such other relief as this Court deems just and proper.

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because this action arises under the laws of the United States, including Section 1557 of the Affordable Care Act, 42 U.S.C. § 18116. The Court also has supplemental jurisdiction over Plaintiff's related state-law negligence claims under 28 U.S.C. § 1367 because they form part of the same case or controversy.

2. Venue is proper in this judicial district, Miami Division, under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to these claims occurred in Broward County, Florida, within this District, and Defendants conduct business and maintain medical facilities within the Southern District of Florida. Given the public health implications and systemic civil rights issues involved, the Miami Division is the most appropriate venue for this matter.

## PARTIES

3. Plaintiff, proceeding under the pseudonym John Doe pursuant to Court approval, is an HIV-positive individual residing in Broward County, Florida

4. Defendant **Gastromed, LLC** is a Florida limited liability company operating a medical practice in Miami-Dade County. Upon information and belief, Gastromed is a recipient of federal financial assistance and is subject to the requirements of Section 504 of the Rehabilitation Act and Section 1557 of the Affordable Care Act.

5. Defendant **Neiza Alvarez** is a licensed Advanced Practice Registered Nurse (APRN) employed by Gastromed, LLC. At all times relevant to this Complaint, Ms. Alvarez acted within the scope of her employment and under color of state and/or federally funded authority.

## FACTUAL BACKGROUND

6. On or about May 12, 2025, Plaintiff attended an appointment at Gastromed, intending to be seen by board-certified gastroenterologist **Dr. Vanessa Sostre Santiago**, as he was presenting with acute gastrointestinal symptoms that had persisted for several weeks. Plaintiff was instead seen by APRN Neiza Alvarez without prior notice or explanation. While APRN Alvarez had briefly interacted with Plaintiff on prior occasions in a limited capacity (e.g., general wellness check-ins), she had not previously served as his treating provider for specialist-level evaluation or management of serious gastrointestinal conditions. Upon information and believe, APRN Neiza Alvarez is not listed among Gastromed publicly identify physician or specialist. APRN Alvarez ordered laboratory testing.

7. On or about May 19, 2025, laboratory testing confirmed a **Shigella / Enteroinvasive E. Coli (EIEC) infection**, a serious gastrointestinal illness. While use of APRN's for routine care may be common, based on Plaintiff's HIV-positive status and prior cholecystectomy, the condition required prompt evaluation and management by a board-certified gastroenterologist, consistent with the purpose of the appointment and prevailing standards of care for immunocompromised patients presenting with severe gastrointestinal infections. Despite this clear need, **Defendants failed to assign a specialist** ignoring all clear clinical indicator and prevailing standards of care. Plaintiff continued to be managed solely by an APRN, with no involvement or consultation from any Gastromed physician, including the board-certified gastroenterologist for whom the appointment had been made.

8. On or about May 19, 2025, APRN Alvarez contacted Plaintiff by telephone and stated that Gastromed would not provide further treatment, **explicitly citing Plaintiff's HIV-positive status as the reason**. Plaintiff questioned this explanation but no alternative medical justification was provided. Alvarez verbally suggested that Plaintiff follow up with his primary physician or an infectious disease specialist and even requested Plaintiff's primary physician's contact information, allegedly to send the laboratory results and discuss Plaintiff's care. **However, no records or communications were ever transmitted to Plaintiff's primary physician**, and no referral was formally made. The absence of any clinical basis for the denial and the failure to follow through on the stated referral supports a reasonable inference that Plaintiff was denied care on the basis of his HIV status, in violation of Section 504 of the Rehabilitation Act and Section 1557 of the Affordable Care Act.

9. Following the denial of follow-up care, **Plaintiff made multiple subsequent attempts to contact APRN Neiza Alvarez** via telephone after being unable to secure timely care elsewhere

due to long wait times for appointments and lack of referral. Plaintiff expressed concern and distress, given the severity of his condition and the urgency associated with his HIV-positive status. Alvarez declined to engage in further discussion and instead directed communications through **Vanessa Alfonso Perez**, a Gastromed staff member. As a result, Plaintiff formally requested copies of his medical records, which were subsequently provided via email by Ms. Perez. This request was driven by Plaintiff's growing sense that the denial of care was motivated by discrimination based on his HIV status, rather than any legitimate medical rationale. Plaintiff's efforts reflect a good-faith attempt to seek appropriate care and documentation, and these actions **do not constitute, and should not be construed as, a refusal of treatment** or follow up or any type, motive or nature that may have been recommended or offered by Defendants to Plaintiff.

10. No medical records, referrals, or follow-up communications were ever transmitted from Gastromed to Plaintiff's primary care physician or any other specialist following the May 2025 consultation, despite APRN Neiza Alvarez having the contact information of Plaintiff's primary care physician. Gastromed's **failure to ensure continuity of care** despite the serious nature of Plaintiff's diagnosis, constitutes negligence under Florida law and deprived Plaintiff of meaningful access to medically necessary services in violation of Section 504 of the Rehabilitation Act and Section 1557 of the Affordable Care Act.

11. Plaintiff's stool testing confirmed Shigella/Enteroinvasive E. coli infection with detected **resistance to erythromycin and trimethoprim-sulfamethoxazole**, but no detected resistance to **fluoroquinolones** or other standard therapies. **Erythromycin resistance does not automatically imply azithromycin** resistance due to differing pharmacokinetics, and Plaintiff was subsequently successfully treated with **azithromycin** at an urgent care facility by an Internal Medicine Doctor. Defendants failed to prescribe any therapy or coordinate timely gastroenterologist intervention

despite this actionable data given to them by Genesis labs, constituting medical negligence and supporting an inference of discriminatory motive, particularly in light of Plaintiff's HIV-positive status.

12. Plaintiff's fecal calprotectin level was critically elevated at **>1552 µg/g**, far exceeding the **normal threshold of <50 µg/g** and indicating severe gastrointestinal inflammation. This level of abnormality is squarely within the scope of a gastroenterologist's expertise and required prompt physician-level evaluation and treatment. Referral to other providers, such as infectious disease or primary care, was not clinically appropriate given the nature of the findings and the original purpose of the gastroenterology visit. Defendants' failure to provide specialist care despite these objective clinical indicators constitutes a clear deviation from accepted medical standards and further supports an inference of discriminatory motive.

13. Defendants may claim that a referral to infectious disease was appropriate due to antibiotic resistance. However, no such referral was documented, communicated clearly, or coordinated with Plaintiff's primary physician. Instead, Plaintiff was verbally advised to **obtain care from other providers**, and no treatment, follow-up, or public health reporting occurred. The absence of continuity of care, despite a serious GI infection and Plaintiff's HIV status, constitutes abandonment, medical negligence, and supports an inference of discriminatory motive.

14. Plaintiff's severe gastrointestinal inflammation, as evidenced by the critically elevated calprotectin level, ultimately improved only after **urgent care initiated azithromycin therapy**. This outcome confirms that Plaintiff's condition was treatable at the time of Defendants' refusal, including by APRN Neiza Alvarez and Gastromed, who had both the clinical information and authority to initiate appropriate therapy. Defendants' failure to act despite available treatment

foreseeably prolonged Plaintiff's suffering and the physical injury caused by the untreated Shigella infection, which in turn aggravated Plaintiff's emotional distress, including but not limited to anxiety, humiliation, and loss of enjoyment of life, direct result of the physical sickness left untreated.

15. The denial of care, which was **explicitly linked to Plaintiff's HIV-positive status**, occurred without any alternative clinical justification and in violation of federal nondiscrimination laws, including Section 504 of the Rehabilitation Act and Section 1557 of the Affordable Care Act. This denial also included Defendants' complete failure to provide any follow-up, continuity of care, or physician-level oversight, further depriving Plaintiff of meaningful access to medically necessary treatment, and failure to assign a board-certified specialist to the Plaintiff.

16. Upon information and belief, APRN Alvarez was acting under the supervision and delegated authority of Dr. Vanessa Sostre Santiago, who was aware of Plaintiff's HIV-positive status at the time of the encounter. Plaintiff had previously received care from Dr. Sostre Santiago at Gastromed without issue, and the May 2025 appointment was scheduled specifically for a gastroenterology consultation. However, without prior notice or explanation, **Plaintiff was seen by an advanced practice nurse rather than the board-certified specialist who had treated him before**. As the facility responsible for coordinating and assigning care, Defendant Gastromed is directly liable for the failure to provide specialist-level evaluation in accordance with standard medical practice according to the situation. This deviation, particularly in light of Plaintiff's immunocompromised status and active gastrointestinal symptoms, **constitutes medical negligence under Florida law** and supports a reasonable inference of discriminatory motive, particularly given Plaintiffs' immunocompromised status.

17. Plaintiff's prior **cholecystectomy** (gallbladder removal) increased his susceptibility to complications from gastrointestinal infections and antibiotic therapies. Despite this known medical history, Defendants failed to provide appropriate follow-up and individualized care of the kind that would have been offered to similarly situated patients without HIV. This failure constitutes a breach of the standard of care under Florida negligence law and deprived Plaintiff of meaningful access to medically necessary services in violation of Section 504 of the Rehabilitation Act and Section 1557 of the Affordable Care Act. It further supports a reasonable inference of discrimination based on disability.

18. **Defendants are recipients of federal financial assistance through Medicare** and are therefore subject to the nondiscrimination provisions of Section 504 of the Rehabilitation Act and Section 1557 of the Affordable Care Act. Plaintiff was openly HIV-positive and had previously received care at Gastromed without issue under this status. However, following a diagnosis of Shigella, a condition commonly associated with immunocompromised individuals, Plaintiff was denied further treatment and was not offered physician-level specialist care. This abrupt deviation in care, occurring after a renewed disclosure of Plaintiff's HIV status, supports a reasonable inference of unlawful discrimination on the basis of disability.

19. Plaintiff subsequently contacted Gastromed by email to raise concerns regarding the denial of care and to **request a compliance review**. In response, Gastromed did not acknowledge the discrimination concerns raised. Instead, it cited a lack of evidence and failed to address Plaintiff's request for civil rights review. **Gastromed also did not identify a designated civil rights coordinator**, as required under federal regulations. Furthermore, Gastromed's failure to meaningfully respond to Plaintiff's civil rights complaint and to engage in even minimal remedial action constitutes a continuation of the discriminatory denial of meaningful access to care in

8

violation of Section 504 of the Rehabilitation Act and Section 1557 of the Affordable Care Act, creating systematic non compliance exposure beyond this individual case.

20. Defendants have **failed to post a Notice of Nondiscrimination** and information regarding a **designated civil rights coordinator** on their public-facing website, as required by 45 C.F.R. § 92.8. This ongoing omission constitutes a continuing violation of Section 1557 of the Affordable Care Act and reflects a broader failure to ensure that civil rights protections are accessible to patients and the general public, underscoring the need for judicial intervention to prevent ongoing harm.

21. Any claim that Defendants acted neutrally or based on medical necessity is undermined by their prior treatment of Plaintiff while openly HIV-positive and by the lack of explanation for the substitution of a non-physician provider despite an appointment for specialist care. Furthermore, Plaintiff's primary care provider at the **AIDS Healthcare Foundation** confirmed that Gastromed was clinically qualified to manage the diagnosed Shigella infection. These facts support a reasonable inference that Plaintiff was denied care based on his HIV status, in violation of federal nondiscrimination laws.

22. Plaintiff reported the alleged denial of care and related civil rights concerns to the U.S. Department of Health and Human Services, Office for Civil Rights (OCR), the Civil Rights Division of the U.S. Department of Justice, and the Florida Department of Health. Plaintiff also sought guidance from Lambda Legal, a nationally recognized authority on HIV-related discrimination, further underscoring the seriousness of the violations alleged. These actions demonstrate Plaintiff's good-faith effort to pursue administrative remedies and highlight the broader public importance of enforcing civil rights protections in federally funded healthcare

settings, as such violations risk deterring other HIV-positive patients from seeking necessary medical care. These matters remain under administrative review at the time of filing.

23. As a direct and proximate result of Defendants' denial and delay of medically necessary care to a physical illness, **Plaintiff suffered severe emotional distress**, including but not limited to, trauma, humiliation, anxiety, depression, sleep disturbances, panic attacks, and symptoms consistent with post-traumatic stress disorder. The prolonged suffering and disregard for Plaintiff's serious medical condition caused a **profound loss of trust in healthcare providers**, as well as mood swings and cognitive difficulties. These harms are attributable to Defendants' failure to provide timely and appropriate treatment for Plaintiff's Shigella infection, but also stemmed from the discriminatory nature of that denial, rather than the natural course of the underlying Shigella infection.

24. Defendants' failure to provide care or arrange proper follow-up after confirming a *Shigella* infection caused Plaintiff to **endure prolonged gastrointestinal illness**, avoidable physical suffering, and worsening of stress-related medical conditions. Plaintiff's bruxism, a physical condition directly aggravated by emotional trauma, has significantly worsened because of the delay of this physical sickness. He is in the process of obtaining dental and maxillofacial records documenting damage to his teeth. **These injuries were a direct and foreseeable consequence of the delay and denial of care of discriminatory nature of a physical illness**.

25.  As a result of the emotional breakdown and destabilization caused by Defendants' refusal to treat Plaintiff following a serious bacterial infection and physical illness, **Plaintiff temporarily discontinued his HIV medication regimen**. This interruption posed substantial health risks and directly flowed from the discriminatory and medically unjustified denial of care. This interruption

was not a voluntary choice made in vacuum; such a reaction is foreseeable particularly in patients with chronic conditions who experience medical stigma and discrimination.

26. **Plaintiff has lost multiple workdays and experienced reduced work performance** due to physical symptoms caused by the untreated gastrointestinal illness, as well as emotional distress directly resulting from that physical sickness, all proximately caused by Defendants' conduct. He also suffered strained family and social relationships and a **substantial loss of enjoyment of life**. These harms were the foreseeable and proximate result of Defendants' failure to meet their obligations under federal and state law.

27. Upon information and belief, **Defendants failed to report Plaintiff's confirmed *Shigella* infection to the Florida Department of Health (DOH)**, as required by Florida Statutes §381.0031(1) and Florida Administrative Code Rule 64D-3.030. This legally mandatory reporting obligation exists to enable timely public health intervention, contact tracing, and clinical oversight. Defendants' omission deprived Plaintiff of access to state public health protocols intended to protect individuals with communicable diseases and prevent complications after Defendants denial of treatment and follow up. This failure constitutes a breach of a statutory duty under Florida law, reflects negligence in the provision of medical care, and further supports a reasonable inference of discriminatory motive in violation of Section 504 of the Rehabilitation Act and Section 1557 of the Affordable Care Act, as similarly situated patients without HIV would have been afforded such basic public health protections. Defendants' omission deprived Plaintiff and the public of timely public health protections, compounding the risk of a broader transmission and increasing potential regulatory scrutiny.

11

28. **Defendants owed Plaintiff a duty to exercise reasonable medical care** consistent with the standard expected of healthcare providers in similar circumstances. Defendants breached this duty by failing to provide appropriate medical attention and follow-up, failing to report a notifiable disease to the Florida Department of Health as required by Florida Statutes §381.0031(1) and Florida Administrative Code Rule 64D-3.030, and failing to act with the level of care required under established medical and public health protocols. These breaches constitute negligence under Florida law and a breach of statutory duty. **They foreseeably and proximately caused harm to Plaintiff, including physical pain and suffering directly resulting from the untreated gastrointestinal illness,** as well as emotional distress and the worsening of pre-existing medical conditions that were proximately caused by that physical sickness. This further supports an inference of discriminatory denial of meaningful access to healthcare services in violation of Section 504 of the Rehabilitation Act and Section 1557 of the Affordable Care Act.

29. Defendants' delay and denial of medically appropriate care for a physical illness placed Plaintiff, an immunocompromised individual, at **substantial and foreseeable risk of further infection and serious complications**. Given Plaintiff's known HIV-positive status, timely and effective intervention was essential to prevent harm. Defendants' failure to act in accordance with the requisite medical standard of care constitutes negligence under Florida law and directly endangered Plaintiff's health and physical well-being.

30. Defendants' actions give rise to liability under both federal and state law and **reflect a troubling disregard for the civil rights of individuals living with HIV**. Their conduct implicates not only compensatory and equitable remedies, but also broader accountability for violating the protections afforded to vulnerable patients under longstanding anti-discrimination statutes. Plaintiff brings this civil action not only to vindicate his own rights, but to prevent the recurrence

12

of such discriminatory treatment cloaked in the guise of medical discretion or administrative protocol.

31. **Plaintiff is proceeding pro se** and, to the extent any portion of this Complaint is found to be deficient, respectfully requests leave to amend pursuant to Rule 15(a) of the Federal Rules of Civil Procedure. In accordance with the liberal amendment standard applied to pro se litigants, such leave should be freely granted when justice so requires.

## CLAIMS FOR RELIEF

**Count I – Violation of Section 1557 of the ACA (42 U.S.C. §18116)**

31. Plaintiff incorporates all prior paragraphs.

32. Defendants are covered entities receiving federal financial assistance.

33. Plaintiff was denied treatment due to his HIV status, a protected class.

34. Discrimination was intentional and caused harm. Defendants' conduct also reflected deliberate indifference to Plaintiff's serious medical needs, creating compliance lapses that, if not addressed, could draw further regulatory scrutiny.

**Count II – Violation of Section 504 of the Rehabilitation Act (29 U.S.C. §94)**

35. Plaintiff incorporates all prior paragraphs.

36. Defendants receive federal funds and discriminated against a qualified individual with a disability.

**Count III – Violation of the Americans with Disabilities Act (42 U.S.C. §12181 et seq.)**

37. Plaintiff incorporates all prior paragraphs.

38. HIV status is a protected disability under the ADA.

39. Defendants failed to accommodate Plaintiff and denied equal services.

**Count IV – Violation of the Florida Civil Rights Act Public Accommodations (Fla. Stat. § 760.08)**

40. Plaintiff incorporates all prior paragraphs.

41. Florida law prohibits disability-based discrimination in public accommodations.

**Count V – Common Law Negligence under Florida Law**

42. Defendants owed a duty of care to Plaintiff.

43. Defendants failed to report a notifiable disease and provide proper referral and follow-up.

44. Plaintiff suffered prolonged illness, emotional harm, and related complications. Defendants' failure to provide the scheduled specialist and proper follow-up constituted a clear deviation from Florida's standard of care, consistent with negligent acts.

14

**Count VI – Failure to Warn / Breach of Public Health Duty (Fla. Admin. Code R. 64D-3.029)**

45. Defendants failed to report a Category I infectious disease in violation of Florida law.

46. This failure deprived Plaintiff of vital public health resources and accountability. Defendants' failure to ensure timely or proper reporting reflected reckless disregard for public health obligations rather than an isolated clerical error, increasing potential regulatory penalties while remaining within the scope of standard malpractice.

**Count VII – Ongoing Violation of Section 1557 and 45 C.F.R. §92.8**

47. Defendants failed to post required nondiscrimination notice on their website and identify a civil rights coordinator.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

48. Plaintiff has exhausted all required administrative remedies, including filing with U.S. Department of Health and Human Services, Office for Civil Rights (OCR), U.S. Department of Justice Civil Rights Division and the Florida Department of Health (DOH). These matters remain under administrative review at the time of filing.

**PRAYER FOR RELIEF**

Plaintiff respectfully requests that this Court:

a. Permit Plaintiff to proceed anonymously;

b. Declare that Defendants violated Plaintiff's rights under Section 1557 of the Affordable Care Act (42 U.S.C. § 18116), Section 504 of the Rehabilitation Act (29 U.S.C. § 794), the Americans with Disabilities Act (42 U.S.C. § 12181 et seq.), the Florida Civil Rights Act (Fla. Stat. § 760.08), and applicable Florida public health and negligence laws;

c. Award compensatory damages, including but not limited to: Emotional distress, mental anguish, humiliation, and trauma; Physical pain and suffering; Loss of enjoyment of life and diminished quality of life; Worsening of pre-existing conditions including bruxism; Past and future medical, dental, and mental health expenses; Tangible and intangible economic losses; Out-of-pocket expenses, including lost wages and diminished work performance;

d. Award punitive damages to deter future misconduct;

e. Award nominal damages where applicable;

f. Award statutory damages as permitted under federal and state law;

g. Issue injunctive relief requiring Defendant Gastromed to implement:

    (i) Mandatory posting of nondiscrimination notices in accordance with 45 C.F.R. § 92.8;

    (ii) Annual staff training on HIV-related nondiscrimination and patient civil rights;

    (iii) Training on mandatory reporting obligations for reportable infectious diseases;

(iv) Implementation of clear procedures for patient grievances and civil rights complaints;

h. Appoint pro bono counsel under 28 U.S.C. § 1915(e)(1) due to the complexity and public importance of the case;

i. Award costs and reasonable attorney's fees, if applicable, under federal or state law;

j. Grant such further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a jury trial on all triable issues.

Dated: July 23, 2025

Respectfully submitted,

By _John Doe_

John Doe
Pro Se Plaintiff
civilrights.doe@gmail.com
U.S. District Court – Southern District of Florida